ELSIE C. TROSETH v. WALLY TROSETH AND ANOTHER.[1]

May 23, 1947.

No. 34,388.

*R. Edison Barr,* for appellant.

*A. M. Joyce,* for respondents.

LORING, CHIEF JUSTICE.

This case comes here on an appeal from judgments for defendants in an action sounding in adverse claims.

The question presented for decision is whether a deed, prepared by the grantor's lawyer and left in his possession to be delivered to the grantees after the grantor's death, was so left under circumstances justifying the trial court in finding that it was left without an intent on the part of the grantor unconditionally to divest herself of control over it.

Elise Troseth, a widow, was on November 4, 1930, the owner of the real property here involved. It was her homestead. She had

[1]Reported in 28 N. W. (2d) 65.

three children, Paul, Walter, and Irene. On the day mentioned, accompanied by Paul, she went to the office of her lawyer, Arthur E. Shanahan, and had him draft a deed from her to her three children. She executed the deed and left it with Shanahan. She instructed him to "keep it and when she died to deliver it to the grantees named in that deed." Shanahan thereafter kept the deed in his files until it was produced in court.

Paul died in January 1944. Plaintiff is his widow and seeks an adjudication that she, as sole heir of Paul, is the owner of a one-third interest in the property in controversy.

When no other light appears to solve the problem of the grantor's intent, courts resort to the grantor's subsequent conduct and expressions for light upon such intent. Hooper v. Vanstrum, 92 Minn. 406, 100 N. W. 229. In Schultz v. Young, 37 N. M. 427, 433, 24 P. (2d) 276, 280, the court said:

"* * * 'when the issue is whether the alleged grantor has divested himself of title, his declarations and acts after the signing of an instrument, in form a deed to the property in dispute, are admissible on the question of delivery.'"

In Mower v. Mower, 64 Utah 260, 269, 228 P. 911, 914; Annotation, 105 A. L. R. 412, where the question was whether the deed had been delivered to the grantee by deceased, statements made by the grantor after the execution of the deed tending to show nondelivery were held admissible, and the court said:

"* * * Since delivery is essentially a matter of intent, which intent is to be arrived at from all the facts and surrounding circumstances, we believe the better rule is to include in those facts and circumstances declarations of the grantor both before and after the date of the deed, at least where it appears that the declarations are made fairly and in the ordinary course of life, and not in apparent anticipation of controversy or litigation with reference to the matter discussed, and in the absence of any evidence of bad faith, fraud, or misrepresentation."

Looking to the record in this case, there is sufficient evidence to support the finding that the deed executed and handed to Shanahan

was "with the understanding that he was not to turn such deed over to her [grantor's] children without her direction and to hold the same until her death, * * *." There was testimony that deceased had talked subsequent to the alleged delivery about her home and said:

"* * * she wanted to live in her own home. That they had worked hard to get it, and she wanted to live in *her own home.*" (Italics supplied.)

As to the disposition of the home, deceased had said with reference to plaintiff, Paul's widow, that "she could not leave the home" to Elsie; that "Elsie wants the home, but I can't do that, and I don't want to; * * * They have had so much more than the others"; and further, that plaintiff had asked the mother to leave her something and that "She [plaintiff] said she had said all she could to her [the deceased]. * * * To get her to leave her something, because Elise [the deceased] was so poorly that she didn't think she would live long."

There was also the following testimony:

"Q. And Elsie wanted the mother to make her some special gift?
"A. No, she [plaintiff] wanted the home, Elise said."

These statements show that long after the alleged divestment the mother treated the homestead as her own to dispose of. While the record is not abundant in other respects as to the delivery, the above is sufficient to support the finding that the mother did not intend to divest herself of control of the deed. Hence, the land passed by inheritance and not by the deed.

Affirmed.